CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
03/28/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| COREY M. STOWERS,<br>        *Plaintiff,*<br><br>v.<br><br>529900 ONTARIO LIMITED, *ET AL.*,<br>        *Defendants.* | CASE NO. 6:17-cv-00037<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Defendant, 529900 Ontario Limited operating as Yoke-Niagara's ("Defendant"), moves to strike Plaintiff Corey Stowers' ("Plaintiff") rebuttal expert report and for summary judgment. (Dkts. 38, 39). Plaintiff, an employee of Georgia-Pacific Corporation (a Third-Party Defendant), claims a "hasp"[1] manufactured by Defendant failed to prevent a machine he was working on from starting up and injuring him. Plaintiff filed suit in Campbell County Circuit Court alleging breach of the implied warranty of merchantability, negligent design, and failure to warn. (Dkts. 1, 17). Alleging diversity of citizenship jurisdiction, Defendant removed the case to this Court.

Defendant claims Plaintiff's rebuttal expert report, written by Dr. Michael Huerta ("Huerta Report"), should be excluded because it raises a new theory of defect. (Dkt. 39 at ECF 5). Defendant also moves for summary judgment, contending that Plaintiff's theory of liability fails as a matter of law, and that federal conflict preemption eliminates Defendant's duty to

---

[1] "Hasps," also called "lockouts," are used to prevent industrial equipment from being energized. (Dkt. 39 at ECF 2). A hasp is essentially a small clip that loops through lockout holes on a circuit breaker, preventing the breaker handle from being switched from the "off" to the "on" position. The use of a hasp is critical when performing maintenance on a piece of machinery, as it prevents someone from inadvertently starting the equipment and endangering the maintenance worker. After a hasp is affixed to a circuit breaker, those performing the maintenance attach additional locks and a picture identification card of the individual conducting the maintenance to the hasp. *Id.*

account for reasonably foreseeable misuses. (Dkt 41 at ECF 10). Because the Huerta Report rebuts Defendant's expert report, I will deny Defendant's motion to strike. I will also deny Defendant's motion for summary judgment because federal law does not preempt Defendants duty to reasonably foresee misuses of its product and the defense of misuse is a jury question.

## I. Factual Background

### a. The Incident

The following facts are not in dispute. Plaintiff was a maintenance worker at Georgia Pacific Corporation's Gladys, Virginia plant. (Dkt. 43-2 at ECF 4). On the day of the incident, two groups were performing maintenance in two separate "Areas" of the plant. (Dkt. 41 at ECF 7). In "Area 3," a small group of employees, including Plaintiff, were working on Conveyor 4220. *Id.* Plaintiff's group was specifically tasked with reinstalling a "drive chain" on the conveyor. *Id.* In "Area 2" another small group of employees was also performing maintenance. *Id.* The maintenance conducted by both groups required multiple circuit breakers to be "locked out," or disabled with a hasp. (Dkt. 43-2 at ECF 4; Dkt. 43-1 at ECF 3).

The circuit breaker for "Conveyor 4220" needed to be locked out by both groups. (Dkt. 43-1 at ECF 3; Dkt. 43-2 at ECF 4). First, the group in Area 2 placed a hasp on the right lockout hole of the Conveyor 4220 circuit breaker. (Dkt. 43-1 at ECF 3; Dkt. 43-2 at ECF 4). Then, Plaintiff's group in Area 3 placed a hasp through the left lockout hole of the same circuit breaker. (Dkt. 43-1 at ECF 3; Dkt. 43-2 at ECF 4). A picture taken after the incident by Georgia Pacific Corporation shows that the hasp was locked into place. Several additional locks, including identification cards of the Plaintiff and his fellow workers, were also affixed to the hasp. (Dkt. 43-2 at ECF 27–28).

After the group in Area 2 completed their maintenance, one of its members returned to the breaker room to switch on several breakers. (Dkt. 41-1 at ECF 23–25). He first removed the hasp on the right hole of the breaker, and inexplicably switched the breaker from the "off" to the "on" position, notwithstanding the hasp from the Area 3 group that was still attached to the left lockout hole. *Id*. This energized the partially installed drive chain that Plaintiff was working on, causing it to strike Plaintiff in the head and arm repeatedly. *Id.*

In his deposition, Mr. Jeffrey Mays, Georgia Pacific Corporation's Health and Safety Manager, testified that it was "common practice" to use only one of the lockout holes on the circuit breaker when using a hasp. (Dkt. 41-1 at ECF 23). The type of hasp in question had been used in the plant for six months prior to the accident. (*Id.* at ECF 28–29).Georgia Pacific Corporation assumed that the hasp would prevent the equipment from being energized when placed through only one lockout hole. *Id.*

**b.** **The Expert Reports**

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff provided Defendant with a written report from two experts, Dr. Dennis L. McGarry and Dr. Nicholas Biery, ("McGarry-Biery Report"). The McGarry-Biery Report posited two main conclusions: (1) "There was no apparent mechanical failure (fracture) of the hasp"; and (2) "[t]he inherent flexible nature of the plastic from which the hasp was manufactured appears to have allowed the switch to be engaged, even with the safety lock in place." (Dkt. 39-3 at ECF 1–2).

Several months after the McGarry-Biery Report, and after additional discovery had been conducted, Defendant provided Plaintiff with its own expert report from Mr. Gary Mullis ("Mullis Report"). Among other things, the Mullis Report concluded that Georgia Pacific failed to comply with Occupational Safety and Health Administration ("OSHA") regulations regarding

the use of hasps and that the cause of the accident was the misapplication of the device—placing the hasp through only one hole when it was designed to be placed through both. In other words, it was not a defect in its design, material, or manufacturing.

Plaintiff responded to the Mullis Report by filing the Huerta Report. The Huerta Report concluded that the "breaker can easily be energized when [Defendant's] hasp is installed in [only one] lock out hole." (Dkt. 39-4 at ECF 14). Further, the Huerta Report concluded that had the diameter of the hasp been thicker, then the breaker could not have been activated when the hasp was looped through only one hole on the breaker. *Id.* The Huerta Report also concluded that putting a properly designed hasp through only one lock out hole is an "effective method" of preventing activation of the breaker. *Id.*

## II. Motion to Strike

Defendant moved to strike the Huerta Report under Rule 37(c)(1), claiming that its contents do not "echo [Plaintiff's initial expert report's] theory nor rebut any of the opinions and conclusions of [Defendant's response report]." (Dkt. 39 at ECF 5). Defendant challenges "merely that the [Huerta Report] does not conform to the Federal Rule." (Dkt. 39 at ECF 6 n.9). I find that the rebuttal report does contradict the conclusions found in Defendant's response report, and therefore I will deny Defendant's motion to strike.

### a. Legal Standard

Expert disclosures "must be accompanied by a written report," containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26 further provides that such disclosures, in the absence of a stipulation or a court order, must be made "if the evidence is intended *solely to contradict or rebut evidence on the same subject matter* identified by another party under Rule 26(a)(2)(B) . . . ." Fed. R. Civ.

P. 26(a)(2)(D)(ii) (emphasis added). If a party fails to comply with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

**b.  Discussion**

Defendant contends the Huerta Report should be stricken because it asserts a new theory of defect. This "new theory" boils down to one conclusion found in the Huerta Report: "Other hasp devices that are commercially available have shank diameters of at least 0.28 inches (7mm) and when placed through one lock out hole of the subject circuit breaker would have prevented the circuit breaker handle from being raised to the on position." (Dkt. 39-4 at ECF 14). Defendant argues Plaintiff's proposed theory of defect regarding the diameter of the hasp is new, inappropriate in a rebuttal report, and "woven after the fact once [Plaintiff] realized the McGarry-Biery theory of defect was flawed." (Dkt. 39 at ECF 6).

"[T]he Fourth Circuit has not addressed how a court should determine whether an expert witness qualifies as an affirmative or rebuttal witness." *Boles v. United States*, No. 1:13CV489, 2015 WL 1508857, at *1 (M.D.N.C. Apr. 1, 2015). The Fourth Circuit has, however, defined rebuttal evidence in general "as '[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party . . . .'" *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) (quoting Black's Law Dictionary 1267 (6th ed. 1990)). And so, "[r]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Boles,* 2015 WL 1508857, at *2 (quotations and citations omitted) (alteration in original). "Expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *WPS Inc. v. Am. Honda Motor*

*Co. Inc.*, No. 3:16-CV-2525-CMC, 2017 WL 4216159, at *2 (D.S.C. Sept. 22, 2017) (quoting *Boles*, 2015 WL 1508857, at *2) (quotations omitted).

In *WPS*, the plaintiff, a car dealer, filed two initial expert reports and two rebuttal reports from the same experts to support its claims for equitable relief against the defendant, American Honda Motor Company. *Id.* at *1. The plaintiff sought to enjoin the defendant from establishing a new car dealership that was set to be built within a 10 mile radius of plaintiff's existing car dealership. *Id.* The defendant objected to the plaintiff's rebuttal reports, contending they did not "contain rebuttal evidence . . . ." *Id.* Both of the plaintiff's rebuttal reports reiterated conclusions previously submitted in their initial reports, with only one report positing new information. *Id.* at *3. The new information was a case study showing an analysis of a new dealership's negative impact on another, close by, dealership. *Id.* This case study was provided in response to the defendant's expert, who stated an "ideal case study would cover the same brand, taking the same action, in the same market." *Id.* at *4 (quotations omitted).

The district court held both of plaintiff's expert rebuttal reports largely failed to rebut the specifics of the defendant's expert report. *Id.* The court reasoned that while the plaintiff's reports addressed the same general issue as defendant's report, they did not actually address any of the defendant's specific arguments. *Id.* Nevertheless, the court did find that the case study on a new dealership's impact on an existing dealership was proper rebuttal evidence. *Id.* at *4. The court reasoned that this part of the report was "in direct response to [the defendant's expert's] analysis involving 'an examination of real world situations of a similar nature where 'after-the-fact' results were available to confirm the conclusions reached in the subject analysis.'" *Id.* Thus, the court admitted the portion of plaintiff's expert report addressing the case study, but excluded the rest.

Like the plaintiff's new case study in *WPS*, here Plaintiff has put forward new evidence responding to Defendant's expert that contradicts Defendant's position. Defendant's Mullis Report concluded that the accident was "not attributable to a defect in design, material or manufacture" of the hasp. (Dkt. 39-1 at ECF 22–23). Indeed, the Mullis Report contended that:

> The width of the universal lockout device along that axis is 0.16 inches, which is less than the space between the tab and the breaker handle measured . . . . It was not necessary for the universal lockout device to "bend or flex" for the breaker to be closed.

(Dkt. 39-1 at ECF 13). Plaintiff's Huerta Report confronts this conclusion by asserting that the hasp's design was still defective—specifically in its diameter—and Defendant failed to warn of this defect. (Dkt. 43-1 at ECF 14).

> If the thickness of the hasp shank were increased slightly, it would be effective in preventing the circuit form being energized. For example if the cross section of the shank was made round with a diameter of 0.25 inches it would have been effective in preventing the circuit from being energized.

(Dkt. 43-1at ECF 10). While Defendant cries foul regarding this alleged "new theory of defect," Plaintiff is nonetheless permitted to respond to Defendant's report with new evidence that rebuts and counteracts the theory posed by Defendant—in this case, that the hasp was not negligently designed. *Stitt*, 250 F.3d at 897.

Ultimately, Plaintiff's initial and rebuttal experts assert the same, consistent position: Defendant's product was defective in design, because it failed to lockout the circuit breaker when placed through only one lockout hole, and Defendant failed to warn Plaintiff of that defect. Plaintiff's change in perspective, from flexibility to diameter, is merely a byproduct of his "attacking the theories offered by the adversary's expert." *Boles*, 2015 WL 1508857, at *2.

Therefore, Defendant's motion to strike will be denied.

## III. Motion for Summary Judgment

### a. Legal Standard

The court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

### b. Discussion

Defendant raises Virginia's common law defense of misuse.[2] "[T]here can be no recovery against [a] manufacturer for breach of . . . implied warranties when there has been an unforeseen

---

[2] This is a diversity of citizenship action where Virginia state law applies. 28 U.S.C. § 1332; *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). In Virginia, "the lex loci delicti, or place of the wrong, standard [has] been 'the settled rule . . . .'" *Jones v. R.S. Jones & Assocs., Inc.*, 431

misuse of the article supplied." *Wood v. Bass Pro Shops, Inc.*, 462 S.E.2d 101, 103 (Va. 1995) (quoting *Featherall,* 252 S.E.2d at 367) (quotation marks omitted). Under a breach of warranty claim, the burden rests on Plaintiff to demonstrate: "(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Featherall*, 252 S.E.2d at 367 (quotations omitted) (quoting *Logan v. Montgomery Ward & Co.*, 219 S.E.2d 685, 687 (Va. 1975). "While a manufacturer may not be held liable for every misuse of its product, it may be held liable for a *foreseeable* misuse of an unreasonably dangerous product." *Jeld-Wen, Inc. v. Gamble by Gamble*, 501 S.E.2d 393, 396 (Va. 1998) (emphasis in original). All that being said, "a manufacturer is not required to supply an accident-proof product." *Besser Company v. Hansen,* 415 S.E.2d 138, 144 (Va. 1992).

1. **The Reasonable Foreseeability Requirement under the Defense of Misuse is not Pre-empted by OSHA Regulations**

Assuming the hasp was unreasonably dangerous and misused,[3] the Court must determine whether the misuse was "reasonably foreseeable" by the Defendant. Defendant argues, under conflict preemption, that OSHA regulations preempt the foreseeability requirement under the

---

S.E.2d 33, 34 (Va. 1993) (quoting *McMillan v. McMillan,* 253 S.E.2d 662 (Va. 1979)). Here, the wrong occurred in Virginia. Further, no party contends that another jurisdiction's law should apply.

[3] The Plaintiff has appeared to concede that the hasp was misused. Indeed, the Huerta Report stated in its conclusions that:

> The designer must consider uses and foreseeable misuses of the product. In this case, [Defendant] should have known about the possibility that their hasp would be used by putting it in only one lockout hole of the Siemens circuit breaker. (This was the standard and effective practice at the plant.)

(Dkt. 43-1 at ECF 11). Further, neither party argues whether the hasp is an unreasonably dangerous product.

defense of misuse. This argument fails because there is no actual conflict between the OSHA regulations and the foreseeability requirement in the defense of misuse.

There are two types of preemption: express and implied. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (U.S. 1990). Express preemption occurs when Congress defines "explicitly the extent to which its enactments pre-empt state law." *Id.* Implied preemption can occur in two ways: (1) when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively" ("field preemption"); or (2) when the state law "actually conflicts with federal law" ("conflict preemption"). *Id.* Conflict preemption occurs when "it is 'impossible for a private party to comply with both state and federal requirements.'" *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2013) (quoting *English*, 496 U.S. at 79). "Under ordinary conflict pre-emption principles a state law that 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of a federal law is preempted." *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "[C]onflict pre-emption is different in that it turns on the identification of 'actual conflict,' . . . . [A] court should not find pre-emption too readily in the absence of clear evidence of a conflict." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884–85 (2000) (citations omitted).

Under the relevant OSHA regulations:

> [Employers are required] to establish a program and utilize procedures for affixing appropriate lockout devices or tagout devices [*i.e.* hasps] to energy isolating devices, and to otherwise disable machines or equipment to prevent unexpected energization, start-up or release of stored energy in order to prevent injury to employees.

29 C.F.R. § 1910.147(a)(3)(i). Specifically, "[l]ockout devices, where used, shall be affixed in a manner that will hold the energy isolating devices in a 'safe' or 'off' position." 29 C.F.R. § 1910.147(d)(4)(ii). Defendant argues these regulations preempt the requirement that such misuses be "reasonably foreseeable," because if it "cannot rely upon employer compliance with

OSHA, it would be potentially subject to 50 different state law product design claims regarding the design of its lockouts." (Dkt. 41 at ECF 13). This argument, however, is misguided because it fails to recognize that the OSHA regulations place no burden on Defendant.

To begin, the OSHA regulations do not apply to Defendant, the manufacturer, but rather to Georgia Pacific Corporation—Plaintiff's employer. That is to say, neither Defendant nor anyone else is currently faced with the impossible task of satisfying two conflicting rules or duties (one state, one federal). *Bartlett*, 570 U.S. at 480 (quoting *English,* 496 U.S. at 79) ("[T]he Court has found state law to be impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements.'"). The "laws" at issue, a state common law defense requiring a manufacturer to foresee potential misuses and the OSHA regulation governing Plaintiff's employer's use of hasps, are different duties addressing different concerns for different parties. The Fourth Circuit has recognized, albeit in an unpublished opinion, that "OSHA regulations are not relevant to the liability of a manufacturer to an employee of an industrial consumer." *Davis v. Hebden, Schilbe & Smith, Inc.*, 52 F.3d 320 (Table) (4th Cir. 1995) (citing *Minichello v. U.S. Industries, Inc.,* 756 F.2d 26, 29 (6th Cir. 1985)). *See also* 29 U.S.C. § 654 (imposing duties on employers, not manufacturers, to comply with "occupational safety and health standards promulgated under this chapter"). In sum, there is no "actual conflict." *Geier*, 529 U.S. at 884.

In *Geier*, the Supreme Court held that conflict preemption barred the application of a state tort law which imposed a higher duty on the defendant than the relevant federal regulations. *Geier*, 529 U.S. at 881. Specifically, the Court found that the state tort law imposing the duty to equip cars with additional airbags conflicted with the federal objective of gradually phasing in such devices over time. *Id. See also Bartlett*, 570 U.S. at 481 (holding that a state law requiring

-11-

additional labeling on prescription drugs was preempted by a federal law forbidding alteration of the label).

Here, however, the federal regulations place no burden on Defendant. The OSHA regulations speak to the employer's duty to ensure machinery can be secured in a "safe" or "off" position. Simply because one of Defendant's customers, in this case Georgia Pacific Corporation, has a distinct duty to keep machinery locked effectively does not mean Defendant is relieved from its duty to take into account foreseeable misuses of its product. Contrary to Defendant's contention, this does not mean that it is required to design "for *all* conceivable misuse settings across all industries." (Dkt. 41 at ECF 15 (emphasis added)). Rather, under the plain language of the defense, Defendant is only required to take into account "reasonably foreseeable" misuses of the hasp. *Featherall*, 252 S.E.2d at 367.

Therefore, I find that OSHA regulations do not preempt the requirement that Defendant contemplate "reasonably foreseeable" misuses in designing its product.

**2. The Defense of Misuse is a Question for the Jury**

As discussed above, in order to assert the defense of misuse, Defendant must account for "reasonably foreseeable" misuses of its product. *Featherall*, 252 S.E.2d at 367. However, in this case Defendant has failed to submit any evidence as to whether the misuse of the hasp, *i.e.* affixing it through only one lockout hole, was reasonably foreseeable. (Dkt. 41 at ECF 11 n.12) ("If the court fails to exclude the Huerta Report, [Defendant] recognizes that it must deal with the issues of product misuse and the reasonable foreseeability of such misuse."). This lack of evidence precludes summary judgment and emphasizes why this issue should be submitted to a jury rather than decided in Defendant's favor on summary judgment. *See Davis*, 52 F.3d at 320. ("The court properly submitted the issue of misuse to the jury."); *Freeman v. Case Corp.*, 924 F.

Supp. 1456, 1472 (W.D. Va. 1996) (same), *rev'd on other grounds,* 118 F.3d 1011 (4th Cir. 1997); *Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 748, 757 (W.D. Va. 2004) ("The factual questions regarding whether the operation of the 1999 Mustang GT amounted to misuse, whether that misuse was foreseeable or not by Ford and whether, if unforeseeable, that misuse was a proximate cause of the accident are all issues for the jury in this case."); *see also Sprouse*, 2009 WL 1404735, at *4 (noting that conflicting expert reports normally present an issue of fact barring summary judgment). The lack of evidence regarding misuse, the outstanding factual questions, and the conflicting expert reports all warrant a finding that summary judgment is inappropriate.

Therefore, Defendant's motion for summary judgment will be denied.

### IV. Conclusion

First, Plaintiff's rebuttal expert report, the Huerta Report, is a true rebuttal report that contradicts and rebuts the findings of Defendant's Mullis Report. Accordingly, the Court will deny Defendant's motion to strike. Second, Defendant's asserted defense of misuse is a question of fact for the jury and thus summary judgment is inappropriate. Therefore, the Court will deny Defendant's motion for summary judgment.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this <u>28th</u> day of March, 2018.

*[signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE